Darren P. Renner, Esq.
KEIDEL, WELDON & CUNNINGHAM, LLP
925 Westchester Avenue, Suite 400
White Plains, New York 10604
Tel: (914) 948-7000
Fax: (914) 947-7010
Email: drenner@kwcllp.com

SUMMONS ISSUED

CV 12 - 1609

BIANCO, J.

Attorneys for Plaintiff David Lerner Associates, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID LERNER ASSOCIATES, INC.,

                       Plaintiff,

          -versus-

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                       Defendant.

**COMPLAINT**

Civil Action No._____

The plaintiff, David Lerner Associates, Inc., under 28 U.S.C. §2201 *et seq.*, and for its Complaint, hereby states as follows:

## **THE PARTIES**

1.      The plaintiff, David Lerner Associates, Inc. ("DLA"), is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 477 Jericho Turnpike, Syosset, New York.

2.    DLA is a privately-held brokerage firm with locations in New York, New Jersey, and Florida.

3.    At all times material herein, DLA was a member of the Financial Industry Regulatory Authority ("FINRA"), an independent regulatory authority for all securities firms doing business in the United States.

4.    The defendant, Philadelphia Indemnity Insurance Company ("PIIC"), is an insurance company organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania.

5.    At all times material herein, PIIC was and is authorized and licensed to transact the business of insurance within the State of New York by the New York State Department of Financial Services.

## JURISDICTION AND VENUE

6.    Diversity jurisdiction exists pursuant to 28 U.S.C. §1332 because the plaintiff and the defendant are citizens of different states and because the value of the matter in controversy exceeds the sum of $75,000.

7.    Venue in this district is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions on which the claim is based occurred within this district.

## INSURANCE POLICY ISSUED BY PIIC

8.      PIIC issued Private Company Protection Plus Insurance Policy, Policy No. PHSD577699 ("the Policy") to DLA effective from November 30, 2010 to November 30, 2011.   A true and accurate copy of the Policy is attached hereto as **Exhibit A**.

9.      DLA has complied with all conditions required of it, including the payment of premiums, under the terms of the Policy, and the Policy was, at all times material herein, in full force and effect.

10.      Section I of Part 1, Insuring Agreement of the Policy, provides as follows:

A. INDIVIDUAL LIABILITY COVERAGE

[PIIC] shall pay on behalf of the Individual Insured, Loss from Claims made against Individual Insureds during the Policy Period (or, if applicable, during the Extending Reporting Period), and reported to [PIIC] pursuant to the terms of this Policy, for D&O Wrongful Acts, except to the extent the Private Company has indemnified the Individual Insured for such Loss.

B. PRIVATE COMPANY INDEMNITY COVERAGE

[PIIC] shall pay on behalf of the Private Company, Loss from Claims made against Individual Insureds during the Policy Period (or, if applicable, during the Extended Reporting Period), and reported to [PIIC] pursuant to the terms of this Policy, for D&O Wrongful Acts, if the Private Company has indemnified such Individual Insureds for such Loss.

## C. PRIVATE COMPANY LIABILITY COVERAGE

[PIIC] shall pay on behalf of the Private Company, Loss from Claims made against the Private Company during the Policy Period (or, if applicable, during the Extended Reporting Period), and reported to [PIIC] pursuant to the terms of this Policy, for a D&O Wrongful Act.

11.     Section II.A. of Part 1 of the Policy defines a *D&O Wrongful Act* as any actual or alleged:

1. act, error, omission, misstatement, misleading statement, neglect, or breach of duty  committed or attempted by an Individual Insured in his/her capacity as an Individual Insured; or

2. act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by the Private Company; or

3. act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by an Individual Insured arising out of serving in his/her capacity as director, officer, governor or trustee of an Outside Entity if such service is at the written request or direction of the Private Company.

12.     The term *Loss* is defined under the Policy as *Damages* and *Defense Costs.*

13.     The term *Defense Costs* is defined under the Policy as "any reasonable and necessary legal fees and expenses incurred in the defense of a Claim."

14.     The term *Claim* is defined under the Policy as, *inter alia,* "a judicial or civil proceeding commenced by the service of a complaint or similar pleading"

4

and "a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document."

## CLAIMS ASSERTED AGAINST DLA

### A.   *The FINRA Complaint*

15.     On or about May 27, 2011, the FINRA's Department of Enforcement filed a disciplinary action against DLA, Disciplinary Proceeding No. 2009020741901 ("FINRA Complaint").  A true and accurate copy of the FINRA Complaint is attached hereto as **Exhibit B**.

16.     The FINRA Complaint alleges that since January 2011, DLA recommended and sold over $300 million of a $2 billion real estate investment trust ("REIT") called *Apple REIT Ten* without performing adequate due diligence in violation of its suitability obligations.

17.     A REIT is a company that owns and usually operates income-producing real estate. To qualify as a REIT, a company must have most of its assets and income tied to a real estate investment and must distribute at least 90 percent of its taxable income to shareholders annually in the form of dividends.

18.     DLA served as the Managing Dealer for the Apple REIT offerings.  In that capacity, DLA was contractually obligated to offer and has offered units of the Apple REITs to its customers on a "best efforts" basis, meaning that DLA was

5

obligated to use its best efforts to sell units of the Apple REITs but was not required to purchase or sell any particular number of units.

19.    The FINRA Complaint alleges that earlier *Apple REITs* under the same management inappropriately valued the REITs' shares at a constant artificial price of $11 notwithstanding years of market fluctuations, performance declines, increased leverage and excessive return of capital to investors.

20.    The FINRA Complaint further alleges that DLA, in its capacity as best efforts underwriter and sole distributor for all of the *Apple REITs*, solicited numerous customers to purchase *Apple REIT Ten* without performing adequate due diligence to determine that there is a reasonable basis to recommend the security to any customer.

21.    The FINRA Complaint claims that DLA misleadingly marketed *Apple REIT Ten* by presenting performance information for earlier *Apple REITs*, implying *that Apple REIT Ten* may be able to achieve similar results.

22.    The FINRA Complaint alleges that DLA violated National Association of Securities Dealers ("NASD") Rules 2310 and 2210(d) (1), and FINRA Rules 2310(b) and 2010, by failing to conduct adequate due diligence, thereby leaving it without a reasonable basis for recommending its customers purchase *Apple REIT Ten*, in addition to using misleading statements regarding the performance of earlier *Apple REITs*.

6

23.     The FINRA Complaint requests the following relief as against DLA: (a) an order that one or more of the sanctions provided under FINRA Rule 8310(a), including monetary sanctions, be imposed; (b) an order that one or more of the sanctions provided under FINRA Rule 8310(a), including that DLA be required to disgorge fully any and all ill-gotten gains and/or make full and complete restitution, together with interest; and (c) an order that DLA bear such costs of proceeding as are deemed fair and appropriate under the circumstances in accordance with FINRA Rule 8330.

24.     On or about December 13, 2011, FINRA amended its complaint to assert additional various causes of action against DLA and David Lerner (the founder of DLA and, at relevant times, DLA's President, Chief Executive Officer, and majority shareholder), individually, alleging, *inter alia*, improper conduct on the part of both DLA and Mr. Lerner following the original FINRA Complaint (the "Amended FINRA Complaint").   A copy of the Amended FINRA Complaint is attached hereto as **Exhibit C**.

25.     DLA denies the material allegations of the FINRA Complaint and Amended FINRA Complaint.

### B.     *The Kowalski Complaint*

26.     On or about June 17, 2011, Nancy Kowalski, filed a civil action in the United States District Court for the Eastern District of New York, Case No. CV-

11-2919 ("Kowalski Complaint") against, *inter alia*, DLA and David Lerner, individually.   A true and accurate copy of the Kowalski Complaint is attached hereto as **Exhibit D**.

27.     The Kowalski Complaint, largely based upon the factual allegations set forth in the FINRA Complaint, claims that the defendants made materially false and misleading statements regarding Apple REITs Nine and Ten.

28.     The Kowalski Complaint generally alleges that the defendants (1) failed to disclose material information concerning the valuation of *Apple REITs Six to Nine*, (2) failed to disclose information regarding the *Apple REITs'* operations model, and (3) provided incorrect or misleading information regarding past distributions from *Apple REITs Six* to *Nine*.

29.     The Kowalski Complaint alleges the following causes of action: (1) violations of Section 11 of the Securities Act of 1933 ("Securities Act") against *Apple REIT Ten*, DLA, and the *Apple REIT Ten* officers and directors on behalf of purchasers of *Apple REIT Ten* shares; (2) violations of Section 12 of the Securities Act Against *REIT Nine, REIT Ten*, and DLA; and (3) control person liability under Section 15 of the Securities Act against *Apple REIT* directors and officers, Apple Nine Advisors, Inc. Apple Ten Advisors, Inc., and Mr. Lerner.

30.     The Kowalski Complaint seeks the following relief: (a) certification of a class consisting of all persons who purchased or otherwise acquired *Apple*

*REIT Nine* and *Apple REIT Ten* securities pursuant to Offering Documents and/or through DLA between June 16, 2008 and present;   (b) a declaration that defendants' conduct is in violation of the law; (c) compensation for plaintiff and the class members for damages they have sustained as a result of defendants' allegedly wrongful conduct; (d) rescission of share purchases; (e) enjoining defendants from further alleged violations of law; and (f) awarding plaintiffs reasonable attorneys' fees, experts' fees, interest, and cost of suit.

31.    DLA denies the material allegations of the Kowalski Complaint.

**C.    *The Kronberg Complaint***

32.    On or about June 20, 2011, Stanley and Debra Kronberg filed a class action complaint in the United States District Court for the District of New Jersey, Case No. CV-11- 03558 ("Kronberg Complaint"), naming multiple defendants, including David Lerner Associates, Inc, David Lerner, Alan Chodosh (DLA's CFO/Executive Vice President), John Dempsey (DLA's Senior Vice President), Martin Lerner (DLA Director), and Steve Sormani (DLA's Chief Compliance Officer), individually.   A true and accurate copy of the Kronberg Complaint is attached hereto as **Exhibit E**.

33.    The Kronberg Complaint, largely based upon the factual allegations set forth in the FINRA Complaint, alleges that for the past seven years, defendants

"engaged in an ongoing scheme to sell more than $6 billion of shares in the *Apple REITs* to DLA's brokerage customers."

34.     The Kronberg Complaint alleges that defendants misstated the *Apple REITs'* business model, omitted material information concerning the *Apple REITs'* operations and the risks associated with investing in the *Apple REITs*, and misrepresented both the value of the *Apple REIT* shares and the returns investors would receive from their investments.

35.     The Kronberg Complaint further alleges that defendants made the negligent misrepresentations concerning the *Apple REITs,* including: (a) misrepresentations about risks; (b) misrepresentations about artificial prices/value; (c) misrepresentations about distributions; and (d) misrepresentations about risks and relative safety.

36.     The Kronberg Complaint alleges the following causes of action: (1) negligent misrepresentation; (2) negligence; and (3) unjust enrichment.

37.     The Kronberg Complaint seeks the following relief: (1) an order certifying the class and appointing plaintiffs as class representatives and plaintiffs' counsel as class counsel; (2) compensatory, special, and general damages; (3) prejudgment interest; (4) equitable relief; and (5) reasonable attorneys' fees and costs of investigation and litigation.

38.     DLA denies the material allegations of the Kronberg Complaint.

**D.**    *The Leff Complaint*

39.     On or about June 28, 2001, Marvin Leff filed a civil action in the United States District Court for the Eastern District of New York, Case No. CV-11-3094 ("Leff Complaint"), naming the same defendants as the Kowalski Complaint, including David Lerner Associates, Inc and David Lerner, individually. A true and accurate copy of the Leff Complaint is attached hereto as **Exhibit F**.

40.     The Leff Complaint, also based on the factual allegations from the FINRA Complaint, alleges that defendants made material misrepresentations and omissions to customers concerning the actual value *Apple REITs Nine* and *Ten*, and also sold shares of *Apple REITs Nine* and *Ten* at inflated prices. Similar to the Kronberg Complaint and Kowalski Complaint, the Leff Complaint seeks to certify a class of all persons who purchased or otherwise acquired *REIT Nine* and *REIT Ten* securities.

41.     The Leff Complaint further alleges the same claims as the Kowalski Complaint: (1) violations of Section 11 of the Securities Act against *Apple REIT Ten*, DLA, and the *Apple REIT Ten* officers and directors on behalf of purchasers of *Apple REIT Ten* Shares; (2) violations of Section 12 of the Securities Act Against *REIT Nine*, *REIT Ten*, and DLA; and (3) control person liability under Section 15 of the Securities Act against *Apple REIT* directors and officers, Apple Nine Advisors, Inc., Apple Ten Advisors, Inc. and Mr. Lerner.

11

42.     The Leff Complaint seeks the following relief: (a) certification of the class and designation of plaintiff as the representative; (b) a declaration that defendants' conduct is in violation of the law; (c) compensation for plaintiff and the class members for damages they have sustained as a result of defendants' wrongful conduct; (d) rescission of share purchases; (e) enjoining defendants from further alleged violations of law; and (f) awarding plaintiffs reasonable attorneys' fees, experts fees, interest, and cost of suit.

43.     DLA denies the material allegations of the Leff Complaint.

**E.     *In Re Apple REITs Litigation and Brody Complaints***

44.     On or about December 13, 2011, the cases underlying the Kowalski, Leff, and Kronberg Complaints were consolidated by Stipulation and Order of Hon. Kiyo A. Matsumoto, United States District Judge, for all purposes under case number 11-CV-02919-KAM-JO, pending in the United States District Court for the Eastern District of New York, captioned In Re Apple REITs Litigation.

45.     On February 17, 2012, the plaintiffs in the action entitled In Re Apple REITs Litigation filed a Consolidated Class Action Complaint, a copy of which is attached hereto as **Exhibit G** (the "In Re Apple REITs Litigation Complaint").

46.     The In Re Apple REITs Litigation Complaint is based upon a similar factual predicate of the other complaints referenced herein, and sets forth the following claims against DLA: (1) violations of Section 11 of the Securities Act;

12

(2) violations of Section 12(a)(2) of the Securities Act; (3) control person liability under section 15 of the Securities Act against David Lerner; (4) breach of fiduciary duty and aiding and abetting breach of fiduciary duty; (5) unjust enrichment; (6) negligence; (7) violation of § 36b-4 of the Connecticut Uniform Securities Act; (8) violation of § 36b-4 of the Connecticut Uniform Securities Act; (9) violation of § 36b-29(a) of the Connecticut Uniform Securities Act; and (10) violation of § 517.301 of the Florida Securities Investor Protection Act.

47.     In addition, on or about February 16, 2012, Laurie Brody, for herself and others similarly situated, brought a class action complaint against DLA in the United State District Court for the Eastern District of New York under Case No. 1:12-cv-00782-KAM-JO.

48.     That action, entitled Laurie Brody v. David Lerner Associates Inc., et al. (the "Brody Complaint," a copy of which is attached hereto as **Exhibit H**), also states a similar factual predicate of the other Complaints referenced herein, and further sets forth the following claims against DLA: (1) breach of fiduciary duty and/or aiding and abetting breaches of fiduciary duty; (2) unjust enrichment; (3) negligence; (4) breach of contract; and (5) fraud/intentional misrepresentation.

49.     By Order of Judge Kiyo A. Matsumoto dated March 6, 2012, the action underlying the Brody Complaint was consolidated with the In Re Apple REITs Litigation.

13

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT-DUTY TO DEFEND)

50.     DLA incorporates herein by reference each and every allegation contained in each paragraph above.

51.     DLA, as well as the individual employees, officers and/or directors of DLA named as defendants in the Kowalski Complaint, the Kronberg Complaint, the Leff Complaint, the In Re Apple REITs Litigation Complaint, the Brody Complaint, the FINRA Complaint and/or Amended FINRA Complaint (hereinafter referred to collectively as the "DLA Complaints"), are insureds under the Policy.

52.     The DLA Complaints all allege Claims made against DLA during the Policy Period for alleged D&O Wrongful Acts, as those terms are defined under the Policy.

53.     Although timely notification of the DLA Complaints was provided to PIIC, PIIC has refused to provide a defense to DLA for the claims made in the DLA Complaints, as PIIC is required to do under the terms and conditions of the Policy.

54.     Notably, PIIC denied coverage to DLA based on its assertion that the acts or omissions alleged in the DLA Complaints were barred by the Professional Services Exclusion contained within the Policy.   The Professional Services Exclusion provides as follows:

The Policy is amended as follows:

14

With respect to coverage under Part 1, the Underwriter shall not be liable to make any payment for Loss in connection with any Claim made against the Insured based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Insured's performance of or failure to perform professional services for others.

It is provided, however, that the foregoing shall not be applicable to any derivative action or shareholder class action Claim alleging failure to supervise those who performed or failed to perform such professional services.

55.     The acts and omissions complained about in the DLA Complaints do not arise out of, directly or indirectly result from or in consequence of, or are in any way involving the DLA's performance of or failure to perform "professional services" for others.

56.     Therefore, PIIC's refusal to provide a defense to DLA in connection with the DLA Complaints constitutes a breach of the Policy.

57.     DLA claims damages as a result of PIIC's breach of the Policy.

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT- DUTY TO INDEMNIFY)

58.     DLA incorporates herein by reference each and every allegation contained in paragraphs 1 through 52 above.

59.     Although timely notification of the DLA Complaints was provided to PIIC, PIIC has refused to indemnify DLA for the claims made in the DLA Complaints, as PIIC is required to do under the terms and conditions of the Policy.

15

60.     DLA incorporates herein by reference the allegations contained in paragraphs 54 through 55 above.

61.     PIIC refusal to indemnify DLA in connection with the DLA Complaints constitutes a breach of the Policy.

62.     DLA has been damaged as a result of PIIC's breach of the Policy in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT-DUTY TO DEFEND)

63.     DLA incorporates herein by reference each and every allegation contained in paragraphs 1 through 52 and 54 through 55 above.

64.     PIIC improperly denied coverage to DLA pursuant to the terms of the Policy.

65.     Pursuant to the Policy, PIIC is obligated to defend its insured, DLA, with respect to the DLA Complaints.

66.     DLA has complied with all conditions required of it, including the payment of premiums, under the terms of the Policy, and the Policy was in full force and effect on the date of the DLA Complaints.

67.     PIIC's failure and refusal to defend DLA in connection with the DLA Complaints is wrongful and in violation of the terms and provisions of the Policy.

68.     DLA seeks a declaratory judgment that PIIC is obligated to the defend DLA in connection with the DLA Complaints under the Policy.

16

69.     DLA has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT-DUTY TO INDEMNIFY)

70.     DLA incorporates herein by reference each and every allegation contained in paragraphs 1 through 52 and 54 through 55 above.

71.     PIIC improperly denied coverage to DLA pursuant to the terms of the Policy.

72.     Pursuant to the Policy, PIIC is obligated to indemnify its insured, DLA, with respect to the DLA Complaints.

73.     DLA has complied with all conditions required of it, including the payment of premiums, under the terms of the Policy, and the Policy was in full force and effect on the date of the DLA Complaints.

74.     PIIC failure and refusal to indemnify DLA in connection with any settlement or judgment in the DLA Complaints is wrongful and in violation of the terms and provisions of the Policy.

75.     DLA seeks a declaratory judgment that PIIC is obligated to indemnify DLA in connection with the DLA Complaints under the Policy.

76.     DLA has no adequate remedy at law.

**WHEREFORE,** plaintiff, David Lerner Associates, Inc., demands judgment on the First, Second, Third, and Fourth Claims for Relief declaring and requiring the following:

1.     That PIIC must defend and indemnify DLA pursuant to the Policy from any and all judgments, costs, disbursements, and attorneys' fees incurred or to be incurred with reference to the claims made against DLA in the DLA Complaints;

2.     Payment of any judgment or settlement incurred to resolve the DLA Complaints, with interest;

3.     Attorneys' fees, costs and incurred and to be incurred with in connection with this action ; and

4.     Such other and further relief as to the Court may seem just, proper, and equitable.

Dated:   White Plains, New York
         March 19, 2012

KEIDEL, WELDON & CUNNINGHAM, LLP

Darren Renner
*Attorneys for Plaintiff*
*David Lerner Associates, Inc.*
925 Westchester Avenue
Suite 400
White Plains, New York 10604
Tel: (914) 948-7000
Fax: (914) 947-7010
Email: drenner@kwcllp.com